UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

```
IN RE:                            )
                                  )    Chapter 7
DAVID A JUEHRING                  )
ANITA M. JUEHRING                 )
                                  )    Bankruptcy No. 04-02966
     Debtors.                     )
_____   )
HABBO G. FOKKENA,                 )
U.S. Trustee                      )    Adversary No. 04-9191
                                  )
     Plaintiff,                   )
                                  )
vs.                               )
                                  )
DAVID A. JUEHRING                 )
ANITA M. JUEHRING                 )
                                  )
     Defendants.                  )
```

**ORDER RE: COMPLAINT OBJECTING TO DISCHARGE**

This matter came before the undersigned for trial on October 11, 2005 on U.S. Trustee's Complaint Objecting to Discharge. Plaintiff U.S. Trustee was represented by Assistant U.S. Trustee Janet Reasoner. Debtors David and Anita Juehring were represented by attorney Brian Peters. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

**STATEMENT OF THE CASE**

U.S. Trustee requests denial of Debtors' discharge under §§ 727(a)(2) and 727(a)(4)(A). The Complaint alleges that by failing to disclose their interest in bank accounts, Debtors made a false oath and concealed property with fraudulent intent. Debtor David Juehring asserts he was not aware of the existence of the bank accounts. Debtor Anita Juehring denies any fraudulent intent.

**FINDINGS OF FACT**

Debtors signed their Chapter 7 petition on July 20, 2004 and filed it on August 2, 2004. The petition, schedules and statement of affairs disclose no cash and no checking, savings or other financial accounts. At the meeting of creditors held on August 30, 2004, Trustee asked Debtors if they had a checking or savings account as of the date of filing bankruptcy. Debtors testified that they had accounts on the date of filing at Dupaco, "savings, about 200, and checking, probably about 500."

Upon investigation, Trustee found that, on the date of filing, Debtors had four joint accounts at Dupaco Community Credit Union with a total balance of $14,330.77. The four accounts were: Christmas Club, $802.94; Investor's Choice Account, $10,003.62; Share Draft Checking, $499.21; Share Draft Savings $3,025.00. Trustee asked Dupaco to freeze the accounts on September 22, 2004 and turn over the funds for administration in the bankruptcy case. She received $8,209.44 from Dupaco. Trustee also made a demand for turnover of the remainder from Debtors. After some initial delay, Debtors paid the remainder of $6,121.33 to Trustee.

Debtor Anita Juehring applied for a withdrawal of $36,000 from her Thrift Savings Plan ("TSP") on July 9, 2004. A TSP check was issued to Anita Juehring on July 19, 2004 in the amount of $32,400. The difference in the amounts reflects the penalty for early withdrawal. Ms. Juehring deposited a total of $15,400 in three of the joint Dupaco accounts on July 21, 2004, one day after she signed her bankruptcy petition. She took cash of $17,000 from the TSP check. The TSP sent a letter to Debtor David Juehring dated July 12, 2004 informing him of his wife's request for the withdrawal. David Juehring did not see this letter. Anita Juehring testified that she hid the letter from her husband.

Anita Juehring has been the postmaster at Farley, Iowa for 28 years. She testified that she and her husband first talked to an attorney about bankruptcy in September 2003, nearly a year before they filed their bankruptcy petition. In December 2003, Ms. Juehring took a withdrawal of $30,000 from her TSP account. This caused a substantial tax obligation. When she applied for another TSP withdrawal in July 2004, she knew more taxes would become due. Ms. Juehring testified that she acted alone in making deposits and taking out cash when

she received the TSP check.  She stated that of the $17,000 cash she received, she did not recall how much cash remained on hand on the petition date.  She used some of that cash to pay the amount the Trustee demanded after the Dupaco accounts were discovered.  She also used some of the cash for expenses as they came up, including work being done on the couple's house.  Ms. Juehring intended to use the funds in the Investor's Choice account to pay the IRS for taxes related to the early TSP withdrawal.

Ms. Juehring testified that Mr. Juehring was not aware of the Dupaco accounts and he had nothing to do with the couple's banking business.  She stated that the TSP account was hers and not her husband's.  She testified that her husband would not have known of the Dupaco accounts or the amounts on deposit there.  Ms. Juehring stated that Trustee only questioned Debtors about checking and savings accounts at the creditor's meeting, not Christmas Club or other accounts.

Debtor David Juehring testified that the did not recall that his name was on all the Dupaco accounts.  He had no idea of his wife's TSP withdrawal in July 2004, although he was aware of the TSP withdrawal she made in December 2003.  Mr. Juehring stated that the TSP account was his wife's business and he was not upset about not being told of the withdrawal.  He testified that he was not aware of Ms. Juehring having cash and did not question where she got cash to pay workmen for projects being done on their house.

Debtors argue that David Juehring had no knowledge of the Dupaco accounts and no intent to mislead by signing his schedules and testifying at the creditors' meeting.  They assert that the TSP funds would have been exempt prior to withdrawal, and amounts necessary to pay taxes on the TSP withdrawal would not have been available to the bankruptcy estate.  Debtors assert that there was no deliberate attempt to conceal assets, just poor timing.

U.S. Trustee argues that Debtors improperly failed to disclose cash and bank accounts existing on the petition date in their schedules, at the creditors' meeting or in response to Trustee's request for turnover.  Debtors have never fully accounted for the $17,000 cash on hand on the petition date. Although the TSP account would have been exempt, once the funds were withdrawn, they are no longer exempt and are available for the bankruptcy estate.

**CONCLUSIONS OF LAW**

Section 727(a)(2) provides that a debtor's discharge should be denied when:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition;

11 U.S.C.A. § 727(a)(2).  To succeed on a § 727(a)(2)(A) claim, the plaintiff must prove by a preponderance of the evidence that: (1) the act complained of was done within one year prior to the date of petition filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate.  In re Korte, 262 B.R. 464, 472 (B.A.P. 8th Cir. 2001).  The elements for § 727(a)(2)(B) are substantially the same except that the plaintiff must prove that the debtor transferred or concealed property of the estate after the bankruptcy petition was filed.  In re Stanke, 234 B.R. 449, 456 (Bankr. W.D. Mo. 1999).

U.S. Trustee also seeks denial of discharge under § 727(a)(4)(A) which states that a debtor is entitled to a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."  To prove a false oath, the plaintiff must show by a preponderance of the evidence that (1) Debtor made a statement under oath; (2) that statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to Debtor's bankruptcy case.  In re Gehl, 325 B.R. 269, 276 (Bankr. N.D. Iowa 2005).

4

Statements made in schedules are signed under penalties of perjury and have the force and effect of oaths, and testimony elicited at the first meeting of creditors is given under oath. Korte, 262 B.R. at 474. For a false oath to bar a discharge, the false statement must be both material and made with intent. Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992); Korte, 262 B.R. at 474. Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false. Korte, 262 B.R. at 474. As a debtor is not likely to admit to fraudulent intent, the debtor's course of conduct and surrounding circumstances may also be considered. Gehl, 325 B.R. at 277.

> As § 727(a)(4)(A) makes clear, "[t]he Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind." Fokkena v. Tripp (In re Tripp), 224 B.R. 95, 98 (Bankr. N.D.Iowa 1998) (citing In re Craig, 195 B.R. 443, 451 (Bankr. D.N.D. 1996)). The debtor's "petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." In re Sears, 246 B.R. at 347 (citing Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992)). See generally National Am. Ins. Co. v. Guajardo (In re Guajardo), 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997) ("[T]he Bankruptcy Code requires disclosure of all interests in property, the location of all assets, prior and ongoing business and personal transactions, and, foremost, honesty. The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole.").

Korte, 262 B.R. at 474.

### ANALYSIS

Based on the foregoing, the Court finds that U.S. Trustee has not proved that the discharge of Debtor David Juehring should be denied. The record shows that he did not have any knowledge about the joint accounts at Dupaco. In addition, any fraudulent transactions were accomplished by Mrs. Juehring

5

without the knowledge or consent of Mr. Juehring.  Thus, the U.S. Trustee has not met the burden to prove Mr. Juehring concealed the accounts with the intent to defraud under § 727(a)(2) or knowingly made a false oath with fraudulent intent under § 727(a)(4)(A).

As to Debtor Anita Juehring, the record supports findings under § 727(a)(2) that she concealed the funds withdrawn from her TSP.  Prepetition, this was Debtor's property.  Postpetition, this was property of the estate.  Although the funds would have been exempt had they remained in Debtor's TSP account, they were no longer exempt after they were withdrawn.

The record also supports findings under § 727(a)(4)(A) that Debtor Anita Juehring knowingly made false statements under oath.  Debtor's failure to disclose the existence of the TSP withdrawal in the amount of $32,400 is obviously material.  On her schedules, Debtor did not disclose the existence of any of the Dupaco accounts which held the funds or the cash portion of the funds, nor has she ever accounted for the cash she withdrew.  She signed the schedules under penalty of perjury.  On questioning by Trustee at the creditors' meeting, Ms. Juehring disclosed only two of the four Dupaco accounts and significantly understated their balances.  Ms. Juehring attempts to rationalize her nondisclosure by arguing that Trustee's questions were limited only to checking and savings accounts.  This is unavailing as the two accounts Debtor failed to disclose, the Christmas Club and Investor's Choice accounts, are obviously types of savings accounts and, regardless, Debtor had the duty to disclose all interests in all accounts of any type.

The remaining element of both §§ 727(a)(2) and 727(a)(4)(A) is Debtor's fraudulent intent.  Although Debtor argues that the sequence of events merely displays poor timing, the Court finds the timing of Debtor's TSP withdrawal to be suspicious.  Within 11 days in July 2004, Debtor Anita Juehring applied to withdraw $36,000 from her TSP account, intercepted the letter informing her husband of the withdrawal, signed her bankruptcy petition and received and deposited funds into accounts only she knew about.  She never disclosed the withdrawal, the accounts or the $17,000 she kept in cash to her bankruptcy trustee.  From this series of activities, the Court can only conclude that Ms. Juehring had a plan to gain access to cash for herself while simultaneously relieving herself of debt through bankruptcy.  Once the TSP

funds were withdrawn, however, they were available for creditors and the bankruptcy trustee and her concealment of these funds constitutes fraud.

Based on all the circumstances, the Court concludes Debtor Anita Juehring concealed these transactions with the intent to hinder or defraud her creditors and her bankruptcy trustee. Furthermore, Ms. Juehring, with fraudulent intent, knowingly made false oaths by failing to disclose these activities on her bankruptcy schedules or during her testimony at the creditors' meeting. U.S. Trustee has proved the elements of § 727(a)(2) and 727(a)(4)(A) by a preponderance of the evidence. Debtor Anita Juehring's discharge must be denied.

**WHEREFORE**, U.S. Trustee's Complaint Objecting to Discharge is GRANTED IN PART AND DENIED IN PART.

**FURTHER**, discharge may enter as to Debtor David Juehring only.

**FURTHER**, Debtor Anita Juehring's discharge is denied.

**FURTHER**, judgment shall enter accordingly.

DATED AND ENTERED:

October 31, 2005

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE